UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSIE RAY LYNN HORN,<br><br>                          Petitioner,<br><br>v.<br><br>W.L. MONTGOMERY, Warden,<br><br>                          Respondent. | Case No.:  14cv3030-BTM (BSG)<br><br>**REPORT AND RECOMMENDATION RE: DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

**I.    INTRODUCTION**

Petitioner Jessie Ray Lynn Horn, a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"), challenging his conviction for robbery, assault with a semi-automatic firearm, personal use of a firearm and offenses committed for the benefit of a criminal street gang in San Diego County Superior Court case number SCD190755/220652.  (Pet. at 1-2, ECF No. 1

1

("Pet.").)[1] The Court has reviewed the Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer, the Traverse, the lodgments, the record, and all the supporting documents submitted by both parties.  For the reasons discussed below, the Court **RECOMMENDS** the Petition be **DENIED**.

## II.   FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). Horn does not dispute the accuracy of the California Court of Appeal's factual summary. *See* Traverse at ECF No. 21 at p. 10.[2]  Accordingly, the following facts are taken from the California Court of Appeal opinion:

### 1. *The Robbery and Its Immediate Aftermath*

Kimberly Elliott and Eulalio Leon were working at an adult book store one night when, shortly after midnight, a masked man entered the store and pointed a black semiautomatic handgun at them. Neither Elliott nor Leon saw the man's face because it was covered by a black cloth that looked like a stocking and was thicker than pantyhose. The man also wore black gloves and other clothing that covered his entire body. The man ordered Elliott and Leon to get on the floor and to give him the money in the cash register.

---

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing system.

[2] In his Traverse, Horn writes: "Petitioner agrees with respondent's 'factual and procedural background of the case."  ECF No. 21 at p. 10; *see also* Respondent's Memo of Points & Authorities in support of its Answer, ECF No. 18-1 at pp. 6-8, which sets forth the Statement of Facts from the California Court of Appeal's opinion.

14cv3030-BTM (BSG)

Elliott opened the cash register and placed approximately $300 in a plastic bag which the masked man handed her. The man then fled.

After the robbery, Elliott activated an alarm, and Leon telephoned 911. The police arrived almost immediately. They spotted a man as he ran out of the store carrying a bag or a mask. As the man ran up the street, the police followed in their patrol car but lost sight of him.

Two other witnesses saw a man carrying a plastic grocery bag and running up the street toward a parked car. They heard the man tell the driver of the parked car to "go, go, get out of here." As the car drove away, the man jumped a fence between two apartment complexes.

The police followed the car into a cul-de-sac. When the car stopped, the officers exited their patrol car and approached the driver. One of the officers saw the driver was holding a pistol; the officer drew his gun, pointed it at the driver and ordered the driver to drop his gun. The driver did not comply, but instead fired at the other officer. Both officers then returned fire, killing the driver. The driver was later identified as Maurice Antoine White, a member of the Lincoln Park criminal street gang.

2. *The Subsequent Police Investigation*

Soon after the robbery and shooting, police officers searched the areas around the adult book store and the fence over which the robber had jumped. Near the book store, an officer found a pair of black and gray gloves and a black semiautomatic handgun. Near the fence, another officer found a white plastic bag, a black sweatshirt and "a do-rag or some type of nylon type of cap" (also called a "pantyhose mask"). These items were photographed, placed in sealed bags and impounded.

In trying to identify the robber, the police initially focused their investigation on Tiano Durham, a Lincoln Park gang member who was a suspect in other robberies. As the investigation progressed, however, the police eventually turned their attention to Horn, who is also a member of the Lincoln Park gang. As part of the investigation, a detective went to Horn's residence in

3

Temecula, told Horn he was investigating the robbery of the adult book store and obtained cells from which a sample of Horn's deoxyribonucleic acid (DNA) could be extracted.2

[FN2] DNA is the genetic material in the nucleus of a cell responsible for the development and function of the cell. With the exception of identical twins, every person's DNA is unique.  For a general description of DNA and forensic tests involving DNA, see People v. Smith (2003) 107 Cal. App. 4th 646, 653-657.

A police forensic investigator tested various items of evidence recovered by the police during their investigation of the robbery at the adult book store and compared DNA found on those items to DNA from known contributors, including Horn. When the investigator analyzed DNA on the do-rag (or pantyhose mask) found near the fence over which the robber jumped after fleeing the book store, she found a mixture from at least two individuals and determined Horn was the "predominant contributor." According to the forensic investigator, a "predominant profile is similar to a single source, which is a profile coming from one individual."3

[FN3] The police forensic investigator testified the probability of finding a match between the DNA on the do-rag (or pantyhose mask) that was consistent with Horn's race was one in 9,100,000,000, 000,000,000.  The investigator also testified the probability of finding a match with the DNA of a randomly selected person of another race was even less likely (by order of magnitude).

Horn's fellow Lincoln Park gang members, White and Durham, were excluded as contributors to the DNA found on the do-rag (or pantyhose mask). On the two gloves and the semiautomatic handgun the police recovered near the adult book store, the forensic investigator found DNA matching the profiles of Horn, White and Durham.

After obtaining these DNA test results, police officers traveled to Virginia to bring Horn back to California for prosecution. Horn had moved to Virginia shortly after the detective went to his house to obtain a DNA sample; while

4

14cv3030-BTM (BSG)

in Virginia, Horn had been arrested and had given the local police a false
name.

(Lodgment No. 1, ECF No. 8-3 at pp. 4-7.)

III.    **PROCEDURAL BACKGROUND**

A jury found Horn guilty of two counts of robbery and two counts of assault with a
semiautomatic firearm.  (Lodgment No. 1, ECF No. 8-3 at p. 3.)  The jury also found
Horn personally used a firearm in the commission of those offenses and committed the
offenses for the benefit of, at the direction of, or in association with, a criminal street
gang.  The trial court found Horn had two prior serious felony convictions and three prior
strike convictions.  Horn was sentenced to prison under the "Three Strikes" law for a total
indeterminate term of 78 years to life and a consecutive total determinate term of 60
years.  *Id.*

Horn appealed his conviction by challenging the sufficiency of the evidence to
support the jury's verdict and arguing an abuse of discretion by the trial court at
sentencing.  (Lodgment No. 13 at ECF No. 19-12.)  The California Court of Appeal
affirmed the judgment.  (Lodgment No. 1, ECF No. 8-3 at 3.)  Horn then sought review
by the California Supreme Court, which was denied.  (Lodgment No. 2 at ECF No. 8-4 at
2.)

Horn filed a petition for writ of habeas corpus review in San Diego Superior Court
alleging judicial bias, interference with the right to present a defense, ineffective
assistance of counsel and prosecutorial misconduct.  (Lodgment No. 4 at ECF No. 8-6 at
9-41.)  The petition was denied for failure to state a prima facie case, failure to raise the

14cv3030-BTM (BSG)

claims on direct appeal and failure to produce evidence substantiating his claims.  (*Id*. at 2-8.)

Horn next filed a petition for writ of habeas corpus in the California Court of Appeal alleging discriminatory charges, ineffective assistance of appellate counsel, ineffective assistance of trial counsel and prosecutorial misconduct.  (Lodgment No. 5 at ECF No. 8-7 at 5.)  The California Court of Appeal denied the petition for failure to raise the claims on direct appeal, failure to state a prima facie case, failure to produce evidence substantiating his claims and failure to establish the performance of counsel was unreasonable under *Strickland v. Washington*, 4466 U.S. 668 (1984).  (Lodgment No. 6 at ECF No. 8-8 at pp. 3-5.)

Horn filed a petition for writ of habeas corpus in the California Supreme Court, which contained the same claims of discriminatory charges, ineffective assistance of appellate counsel, ineffective assistance of trial counsel and prosecutorial misconduct. (Lodgment No. 7 at ECF No. 8-9 at 9.)  The California Supreme Court summarily denied the petition.  (Lodgment No. 8 at ECF No. 8-12.)

Horn filed a second petition in the California Supreme Court, which contained a due process claim.  (Lodgment No. 9 at ECF No. 8-13 at 9.)  The California Supreme Court denied the petition citing to *In re Clark*, 5 Cal. 4th 750, 767-769 (1993); *People v. Duvall*, 9 Cal. 4th 464, 474 (1995) and *In re Swain*, 34 Cal. 2d 300, 304 (1949). (Lodgment No. 10 at ECF No. 8-14 at 2.)

**IV.   PARTIES' CLAIMS AND ARGUMENTS**

Horn raises four claims in his Petition.  First, he alleges "discriminatory charges" by which he argues the trial court erroneously allowed him to be convicted of the same crime as his co-defendant and fellow Lincoln Park gang member, Tiano Durham.  (Pet. at

14cv3030-BTM (BSG)

12-16, ECF No. 1.)  Second, he argues ineffective assistance of appellate counsel for failure to challenge the trial court's exclusion of the defense argument that Horn was innocent because Tiano Durham actually pleaded guilty to the robbery.  (Pet. at 18-20, ECF No. 1.)  In his third claim, Horn contends trial counsel was ineffective for failing to conduct a pre-trial investigation.  (Pet. at 22-27, ECF No. 1.)  Finally, for his fourth claim he argues two issues: (a) the prosecutor engaged in misconduct by listing a potential witness (who was never called) solely to create a conflict with retained counsel and (b) the prosecutor engaged in misconduct by prosecuting two men for the same crime.  (Pet. at 29-36, ECF No. 1.)

Respondent argues claims one and four are procedurally barred because the state court expressly denied Horn's claims on procedural grounds by finding that the claims could have been, but were not, raised on direct appeal.  (Mem. of P. & A. Supp. Answer at 10-13, ECF No. 18-1.)  Respondent further asserts that the state court's resolution as to claims two (ineffective assistance of appellate counsel) and three (ineffective assistance of trial counsel) was neither contrary to, nor an unreasonable application of the test for ineffective assistance under *Strickland v. Washington*, 477 U.S. 688 (1984).  (*Id.* at 13-17.)

**V.   DISCUSSION**

Petitioner presented claims one through four to the California Supreme Court on August 4, 2014.  (Lodgment No. 7 at ECF No. 8-9.)  The California Supreme Court summarily denied the petition on  October 29, 2014.  (Lodgment No. 8 at ECF No. 8-12.)  The California Supreme Court's summary denial did not provide the reasoning underlying its decision rejecting Horn's claims.  (*Id.*)  Therefore, this Court will "look through" to the California Court of Appeal's decision from March 13, 2013, which stands

14cv3030-BTM (BSG)

as the last reasoned decision pertaining to Horn's claims.  (Lodgment 6 at ECF No. 8-8.) *See Medley v. Runnels,* 506 F.3d 857, 862 (9th Cir. 2007) ("On habeas review, a federal court looks through unexplained state court decisions leaving, in effect, the denial of post-conviction relief to the last reasoned state court decision to address the claim at issue.")

### A. **The Court of Appeal's Opinion Denying Horn's Petition**

In its March 13, 2013 decision, the California Court of Appeal denied the petition for failure to raise the claims on direct appeal, failure to state a prima facie case, failure to produce evidence substantiating his claims and failure to establish the performance of counsel was unreasonable under *Strickland v. Washington*, 4466 U.S. 668 (1984). (Lodgment No. 6 at ECF No. 8-8 at pp. 3-5.)

Specifically, the California Court of Appeal's decision cited to: (1) *In re Clark*, 5 Cal. 4th 750, 765 (1993) in support of its finding that Horn failed to raise his discriminatory charges, ineffective assistance of trial counsel, and prosecutorial misconduct claims on direct appeal and (2) *People v. Duvall*, 9 Cal. 4th 464, 474, for the finding that Horn failed to substantiate his prosecutorial misconduct claim and his ineffective assistance of trial counsel claim.  *Id.*  The Court of Appeal stated:

> "On December 26, 2012, Horn filed a petition for writ of habeas corpus in this court, contending (1) his conviction was a 'product of judicial bias' because he was prosecuted after Durham had pleaded guilty to the robbery; (2) appellate counsel provided ineffective assistance of counsel for not challenging the trial court's ruling Horn could not argue he was innocent of the charges because Durham had pleaded guilty to the robbery; (3) trial counsel provided ineffective assistance of counsel; and (4) the prosecutor committed misconduct for (a) naming a witness who was not subsequently called to testify, resulting in the withdrawal of Horn's retained attorney for conflict of interest and (b) using irreconcilable theories of guilt by advancing the theory Durham was the lone gunman and obtaining a conviction on those

grounds, and then prosecuting him for the same offense.

With the exception of his claim of ineffective assistance of appellate counsel, Horn's claims arise from his trial.  A writ of habeas corpus cannot serve as a substitute for an appeal where the claimed errors could have been, but were not, raised on a timely appeal from the judgment of conviction.  (*In re Clark* (1993) 5 Cal. 4th 750, 765.)"

(Lodgment No. 6 at ECF No. 8-8 at 3)

In addition to relying on the procedural bar of *In re Clark*, the Court of Appeal addressed the weaknesses of Horn's first, second and fourth claims, stating:

"The materials submitted in support of Horn's petition for writ of habeas corpus do not support his assertion the prosecution believed Durham was the sole gunman in the robbery and maliciously prosecuted Horn for the same crime.  Law enforcement initially believed that Durham was the gunman; however that belief changed when Durham was excluded as a contributor of the DNA on the stocking mask that was discarded by the perpetrator during flight and Horn was identified as the primary contributor of the DNA on the stocking mask.  The prosecution proceeded on the theory Horn was the gunman and Durham aided and abetted the crime by providing materials for it, as he did in three other robberies that occurred close in time to the robbery for which Horn was tried and convicted.  Durham did not plead guilty to robbery as a principal.  In addition, he did not plead to assault with a semi-automatic firearm, with enhancements for personal use of a firearm, charges the prosecution would have sought, had it believed Durham was the gunman.  Although Durham testified at trial that he was the sole gunman and Horn was not involved in the offense, the jurors disbelieved his testimony.  Horn's DNA was found on all items discarded by the gunman after the robbery.  Durham told police officers a man named 'Buddy Love' was involved in the offense.  Horn used the name 'Buddy Love.'  Horn does not make a prima facie showing to merit an order to show cause on contentions

9

14cv3030-BTM (BSG)

(1),[3] (2)[4] and (4)(b),[5] as described above."

(Lodgment No. 6 at ECF No. 8-8 at 3.)

With respect to claim (4)(a),[6] the Court of Appeal also stated:

"Horn has not provided any evidence to substantiate his claim the
prosecution acted maliciously when it named a witness who was not called
to testify, as a ploy to disqualify retained counsel.  We presume the
regularity of proceedings that resulted in a final judgment.  (People v. Duvall
(1995) 9 Cal. 4th 464, 474.)"

(*Id.*)

## B. The Procedural Default Doctrine

As explained in the Parties' Arguments Section IV, *supra*, Respondent argues
Horn's *first and fourth* claims are procedurally defaulted by virtue of the Court of
Appeal's cite to *In re Clark* (1993) 5 Cal.4th 750, 765 and its finding that these claims
could have been, but were not, raised on a timely appeal from the judgment of conviction.

"The procedural default doctrine 'bar[s] federal habeas [review] when a state
court decline[s] to address a prisoner's federal claims because the prisoner has failed to
meet a state procedural requirement.'"  *Calderon v. United States District Court*, 96 F.3d

---

[3] Horn's contention 1 was summarized by the Court of Appeal as: "his conviction was a 'product of judicial bias' because he was prosecuted after Durham had pleaded guilty to the robbery."
[4] Horn's contention 2 was summarized by the Court of Appeal as: "appellate counsel provided ineffective assistance of counsel for not challenging the trial court's ruling Horn could not argue he was innocent of the charges because Durham had pleaded guilty to the robbery."
[5] Horn's contention 4(b) was summarized by the Court of Appeal as: "using irreconcilable theories of guilt by advancing the theory Durham was the lone gunman and obtaining a conviction on those grounds, and then prosecuting him for the same offense."
[6] Horn's contention 4(a) was summarized by the Court of Appeal as: "naming a witness who was not subsequently called to testify, resulting in the withdrawal of Horn's retained attorney for conflict of interest."

10

1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). The doctrine "'is a specific application of the general adequate and independent state grounds doctrine.'" *Calderon*, 96 F.3d at 1129 (quoting *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994)).

State courts can reach the merits of federal claims without foreclosing a respondent's procedural default affirmative defense in federal court, as long as there is no ambiguity that an adequate and independent state procedural ground for denial is applicable to the claim. *Harris v. Reed,* 489 U.S. 255, 264 n.10 (1989); *see Beard v. Kindler*, 558 U.S. 53, 130 S.Ct. 612 (2009)(a state procedural rule may count as an adequate and independent ground even if the state court had discretion to reach the merits despite the default).

Under the adequate and independent state grounds doctrine, federal courts "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Calderon*, 96 F.3d at 1129(quoting *Coleman*, 501 U.S. at 729); *see also La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001); *Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000).

The Ninth Circuit has held that because procedural default is an affirmative defense, Respondent must first have "adequately pled the existence of an independent and adequate state procedural ground." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). Once the defense is placed at issue, the burden shifts to the petitioner, who must then "assert[ ] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." *Id*. The "ultimate burden" of proving procedural default, however, belongs to the state. *Id*. If the state meets this burden, federal review of the claim is

14cv3030-BTM (BSG)

foreclosed unless the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### 1. Procedural Default Analysis and Recommendation

#### a. *Citation to In re Clark - Claims One and Four*

As for Horn's first and fourth claims, the Court of Appeal clearly stated these claimed errors could have been, but were not, raised on a timely appeal from the judgment of conviction, and cited to *In re Clark,* 5 Cal.4th at 765. *In re Clark* held, "in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction." *Id*. quoting *In re Dixon*, (1953) 41 Cal.2d 756, 759. Because the appellate court clearly applied a procedural bar, this Court presumes the California Supreme Court also found the claim defaulted. *See Lee v. Jacquez*, 788 F.3d 1124, 1133 (9th Cir. 2015) ("If the California Supreme Court denies a habeas petition without explanation, the federal courts will presume that a procedural default was imposed if 'the last reasoned opinion on the claim explicitly impose[d] a procedural default.'")

As explained above, when a state court rejects a federal claim based upon a violation of a state procedural rule which is adequate to support the judgment and independent of federal law, a habeas petitioner has procedurally defaulted his claim in federal court. *Coleman,* 501 U.S. at 729-30. A state procedural rule is "independent" if it is not interwoven with federal law. *La Crosse,* 244 F.3d at 704. A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established" at the time of the

12

1    default. *Calderon*, 96 F.3d at 1129.

2        The United States Supreme Court has recently confirmed that the *Dixon* bar, where

3    a defendant procedurally defaults a claim raised for the first time on state collateral

4    review if he could have raised it on direct appeal, is an independent and adequate state

5    procedural rule. *Johnson v Lee,* 136 S. Ct. 1802, 195 l.Ed 2d 92 (2016). Thus,

6    Respondent has carried the initial burden of pleading the existence of an adequate and

7    independent state procedural bar, and the burden has shifted to Horn to challenge the

8    independence or adequacy of this procedural bar in his Traverse. *Bennett,* 322 F.3d at

9    586. Because Petitioner has not challenged the independence or adequacy of the state

10   rule anywhere in his Traverse, **IT IS RECOMMENDED** that the Court find claims one

11   and four to be procedurally defaulted. *Id.* The Court may nevertheless reach the merits

12   of the claim if Horn can demonstrate cause for his failure to satisfy the state procedural

13   rule and actual prejudice arising from the default, or that a fundamental miscarriage of

14   justice would result from the Court not reaching the merits of the defaulted claims.

15   *Coleman*, 501 U.S. at 750.

16                           **i.    Cause**

17        In procedural default cases, the cause standard requires the petitioner to show that

18   some objective factor external to the defense impeded counsel's efforts to raise the claim

19   in state court. *Murray v. Carrier*, 477 U.S. 478, 488; 106 S. Ct. 2639 (1986). The cause

20   prong can be satisfied if Petitioner shows an "objective factor" precluded him from

21   raising his claim, such as interference by state officials or constitutionally ineffective

22   counsel. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). Attorney error short of

23   ineffective assistance of counsel, however, does not constitute cause and will not excuse

24   procedural default. *Murray*, 477 U.S. at 486-488.

25

26                              13

27

28                                      14cv3030-BTM (BSG)

Horn does contend in the Petition and Traverse that his trial counsel (claim three) and appellate counsel (claim two) were ineffective.  As regards trial counsel, Horn alleges his appointed trial counsel failed to conduct a pre-trial investigation, which included contacting a witness named "Malik."  This witness had an alternative theory as to why Horn's DNA was identified on the pantyhose mask used in the robbery, but Tiano Durham's DNA was not.  (Pet. at 22-27, ECF No. 1.)  Horn has failed to satisfy the prong cause as regards his allegations of ineffective assistance of trial counsel because he has not shown how failure for his trial counsel to conduct a pre-trial investigation precluded him from raising claims 1 and 4 on direct appeal.  *See Murray*, 477 U.S. at 488.  The cause standard requires petitioner to show trial counsel's ineffectiveness caused claims one and four from not being brought on direct appeal.  He has not done so.  Further, even assuming there was some causal connection, trial counsel was not constitutionally ineffective as the Court discusses in depth herein in its discussion of ineffective assistance of counsel at section C.3.

In claim two, Horn alleges that his appellate counsel was ineffective for not challenging the trial court's ruling that Horn could not argue he was innocent of the charges because Durham had pleaded guilty to the robbery.  Horn contends the trial court erred by denying a defense in limine motion, which sought to prohibit the prosecution from arguing that Horn was the sole gunman responsible for the adult book store robbery. (Pet., ECF No. 1 at 12 Traverse, ECF No. 21 at 13.)  The trial court ruled that the "[d]efense motion to prohibit the Prosecutor's contradictory argument that the Defendant robbed the "F" Street bookstore, having previously secured Co-Defendant Durham's conviction for the same act, as a prejudicial denial of Defendant's Due Process Rights is denied."  (ECF No. 19-3 at 24.)  Again Horn fails to satisfy the cause prong in that he has

14

1   not shown how his appellate counsel's failure to raise on direct appeal the denial of the in

2   limine motion precluded him from bringing on direct appeal claims one and four.  Even

3   assuming these claims can be bootstrapped to the evidentiary issue alleged in claim two,

4   the Court still finds Horn has not satisfied the cause prong in that this Court does not find

5   that appellate counsel was constitutionally ineffective for not raising the issue in claim

6   two.[7]  **IT IS THEREFORE RECOMMENDED** that the Court find Horn has not shown

7   cause to excuse the default.  *McCleskey*, 499 U.S. at 493-94; *Edwards v. Carpenter*, 529

8   U.S. 466, 451-52, 120 S. Ct. 1587, 146 L.Ed.2d 518 (2000); *Miller v. Keeney,* 882 F.2d

9   1428, 1434 (9th Cir. 1989).

### 2.  Actual Prejudice

11       "Prejudice [to excuse a procedural default] is actual harm resulting from the

12   alleged error."  *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998).  Horn cannot

13   demonstrate prejudice arising from the procedural bar as to claims one and four because

14   the Court of Appeal considered the merits of claims one and four, and this Court herein is

15   addressing the merits of those claims.  Hence, there is no actual prejudice due to the

16   procedural bar.[8]  **IT IS RECOMMENDED** that the Court find Horn has not shown

17   "actual harm resulting from the alleged error" sufficient to excuse the default.  *Vickers*,

18   144 F.3d at 617.

19   *///*

---

[7] *See* section C.2 of the instant Report & Recommendation wherein this Court recommends there was no constitutional ineffective assistance of appellate counsel for not raising this issue on appeal.

[8] Regardless of a finding of actual prejudice, since Horn has not shown cause, the state procedural bar stands. The Court may nevertheless reach the merits of the claim if Horn can demonstrate cause for his failure to satisfy the state procedural rule and actual prejudice arising from the default, or that a fundamental miscarriage of justice would result from the Court not reaching the merits of the defaulted claims. *Coleman*, 501 U.S. at 750.

15

### 3. Fundamental miscarriage of justice

Horn can still avoid the procedural default if he can demonstrate that a fundamental miscarriage of justice would result from this Court's failure to reach the merits of the claim. The "miscarriage of justice" exception is limited to petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "In order to pass through *Schlup*'s gateway, and have an otherwise barred constitutional claim heard on the merits, a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Majoy v. Roe*, 296 F.3d 770, 775-76 (9th Cir. 2002), quoting *Schlup*, 513 U.S. at 327.

"A petitioner need not show that he is 'actually innocent' of the crime he was convicted of committing; instead, he must show that 'a court cannot have confidence in the outcome of the trial.'" *Majoy*, 296 F.3d at 776, *quoting Carriger v. Stewart*, 132 F.3d 463, 478 (9th Cir. 1987) (en banc), *quoting Schlup*, 513 U.S. at 316. For the reasons discussed in the instant Report and Recommendation addressing the lack of prejudice with respect to Plaintiff's ineffective assistance of appellate counsel, Petitioner has not shown that in light of all the DNA evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt of robbery. Nor has he shown that this Court cannot have confidence in the outcome of the trial. *Majoy,* 296 F.3d at 776; *Schlup,* 513 U.S. at 314-15.

**IT IS THEREFORE RECOMMENDED** that the Court find habeas relief is not available as to Claims One and Four because they are procedurally defaulted and Petitioner has failed to demonstrate cause, prejudice or a fundamental miscarriage of

14cv3030-BTM (BSG)

1   justice sufficient to excuse the default.

2        **C. Merits of Claims One Through Four[9]**

3        **1.  AEDPA Standard of Review**

4        The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs review of

5   Horn's Petition because Horn filed his federal habeas Petition after the Act's 1996

6   effective date.  *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *see also Harrington v.*

7   *Richter*, 562 U.S. 86, 97-98, 131 S. Ct. 770, 187 L.Ed.2d 624 (2011) (applying 28 U.S.C.

8   § 2254(d)(1) to federal habeas review of state court's determination of an ineffective

9   assistance of counsel claim).  The AEDPA imposes a "highly deferential standard for

10  evaluating state-court rulings," requiring that "state-court decisions be given the benefit

11  of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh*, 521 U.S. at

12  333 n.7).  Under the AEDPA's highly deferential standard of review, a federal court may

13  not grant habeas relief on a claim adjudicated on its merits in state court unless the

14  adjudication:

15          (1) resulted in a decision that was contrary to, or involved an unreasonable

16          application of, clearly established Federal law, as determined by the Supreme

17          Court of the United States; or

18          (2) resulted in a decision that was based on an unreasonable determination of

19          the facts in light of the evidence presented in the state court proceeding.

20  28 U.S.C. § 2254(d)

21       "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in

22

23  ――――――――――――

24  [9] Even though the Court recommends a finding that claims one and four are procedurally barred,
    because the Court of Appeals also addressed the merits of these claims, this Court will do likewise.

25  Claims one and four are addressed after claims two and three, below.

26

27

28

state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  *Harrington,* 562 U.S. at 98.  Under the first AEDPA exception, "clearly established Federal law" refers to the Supreme Court "holdings, as opposed to the dicta," as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 365 (2000).  Although only Supreme Court holdings are binding, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011).

> **a.  Whether the decision was contrary to, or involved an unreasonable application of, clearly established Federal law - 28 U.S.C. § 2254(d)(1).**

In determining whether a state court's decision was "contrary to" clearly established Federal law, a reviewing court must evaluate whether the decision "'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011) (quoting *Williams*, 529 U.S. at 406).  A state court is not required to cite or even be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Clark v. Murphy*, 331 F.3d 1062, 1071 (9th Cir. 2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

If a state court decision "identifies the correct governing legal principle in existence at the time," a reviewing court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case."  *Cullen*, 131 S.Ct. at 1399 (quoting *Williams*, 529 U.S. at 413).  An "unreasonable application" of law is "different from an incorrect application" of that law.  *Harrington*, 562 U.S. at 102 quoting *Williams*, 529 U.S. at 410).

14cv3030-BTM (BSG)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**b. Whether the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding - 28 U.S.C. § 2254(d)(2).**

Under the second AEDPA exception, "factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

**c. Deferential Review**

The AEDPA standard requires a high level of deference to state court decisions, such that it "preserves authority to issue habeas writs in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents." *Harrington*, 562 U.S. at 102. Accordingly, to obtain federal habeas relief, a state prisoner must show that the state court's decision on a federal claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87; *see also Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'") Moreover, even if this Court finds such a state court error of clear constitutional magnitude, habeas relief is not available unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

**2. Claim Two - Ineffective Assistance of Appellate Counsel**

In claim two, Petitioner argues he received ineffective assistance of counsel on

14cv3030-BTM (BSG)

appeal when his appellate counsel failed to challenge the trial court's exclusion of the defense argument that Horn was innocent because Tiano Durham actually pleaded guilty to the robbery of which he was convicted.  (Pet. at 18-20, ECF No. 1, Traverse at 18-20; ECF No. 21.)  Respondent argues Durham did not plead guilty to being the robber of the F Street adult book store, therefore the state court's resolution as to claim two was neither contrary to, nor an unreasonable application of the test for ineffective assistance under *Strickland v. Washington*, 477 U.S. 688 (1984).  (Mem. of P. & A. Supp. Answer at 13-17, ECF No. 18-1.)

### a.  **Applicable Federal Law**

It is clearly established that "[t]he proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*."  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)).  A petitioner must first show that his appellate counsel's performance fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  Specifically, a petitioner must show that counsel "unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them."  *Smith*, 528 U.S. at 285.  He must then show he was prejudiced by counsel's errors.  *Strickland*, 466 U.S. at 694.  To establish prejudice, Horn must demonstrate that he would have prevailed on appeal absent counsel's errors.  *Smith*, 528 U.S. at 285.

The Ninth Circuit has observed that:

[Strickland's] two prongs partially overlap when evaluating the performance of appellate counsel. In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the

20

hallmarks of effective appellate advocacy. . . . Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason-because she declined to raise a weak issue.

*Miller*, 882 F.2d at 1434.  Appealing every arguable issue would do disservice to a client because it would draw an appellate judge's attention away from stronger issues and reduce appellate counsel's credibility before the appellate court. *Id*. at 1428.

### b.  Analysis

As explained in the Procedural History section III *supra*, Horn's ineffective assistance of appellate counsel claim was presented to the California Supreme Court, which summarily denied the petition. (Lodgment Nos. 7-8 at ECF No. 8-9 and ECF No. 8-12.)  Therefore, this Court will "look through" to the California Court of Appeal's decision from March 13, 2013, which stands as the last reasoned decision pertaining to Horn's claims.  (Lodgment 6 at ECF No. 8-8.)  *See Medley,* 506 F.3d at 862.  The Court will apply the highly deferential standard of review under 28 U.S.C. § 2254(d) to the appellate court opinion, which denied Horn's ineffective assistance of appellate counsel claim stating:

"Horn also asserts appellate counsel provided ineffective assistance of counsel for not asserting on appeal the trial court erred when it granted the prosecution's motion in limine to exclude the defense argument Horn was innocent because Durham had pleaded guilty to the robbery....

There is a strong presumption counsel's conduct falls within the wide range of reasonable profession assistance (*Strickland v. Washington, supra*, 466 U.S. at p.689.)  Further, because Horn's DNA was found on all the items

21

that were discarded by the gunman in flight and the jury disbelieved
Durham's testimony that he was the gunman, Horn does not show there was
a reasonable probability a more favorable outcome would have resulted had
the evidence been presented at trial, or had the appellate counsel challenged
the in limine ruling on appeal.  As discussed earlier, Durham's plea was not
dispositive of Horn's innocence."[10]

(Lodgment No. 6 at ECF No. 8-8 at pp.4-5.)

　　　Given the strength of the DNA evidence against Horn demonstrating that he, not
Durham, was the sole gunman in the robbery, and the fact that Durham did not plead
guilty as the principal, it was neither unreasonable, nor prejudicial for appellate counsel
to decline to raise the claim that Horn was innocent because Durham had actually pleaded
guilty to the robbery.  Specifically, trial testimony from the book store's employee
confirmed that a single gunman pointed a semiautomatic at her and the store's security
guard and then ordered them to hand over money in the cash register. (Reporter's
Transcript 197-98, ECF No. 19-7.)  The employee testified the robber was gloved and
wore a black, stocking-like cloth that covered his eyes and face.  (Reporter's Transcript
199-200, 207-208 and 240,  ECF No. 19-7.) The pantyhose mask used in the robbery was
discarded during the perpetrator's getaway and found by police.  Horn was later
identified by a police forensic investigator as the predominant contributor of DNA on the
pantyhose mask.  (Reporter's Transcript 591, ECF No. 19-9.)  The police forensic
investigator also testified at trial that the probability of finding a match between the DNA
on the pantyhose mask, which matched Horn's profile, and some other randomly selected
person of Horn's race was one in 9,100,000,000,000,000,000.  (*Id.*)  Clearly, appellate

_____

[10] "The prosecution proceeded on the theory that Horn was the gunman and Durham aided and abetted
the crime by providing materials for it, as he did in three other robberies that occurred close in time to
the robbery for which Horn was tried and convicted.  Durham did not plead guilty as the principal...."
(Lodgment No. 6 at ECF No. 8-8 at 2.)

counsel recognized that in light of the DNA evidence on the pantyhose mask, which matched Horn's profile, the likelihood that Horn would be successful arguing it was Durham, not him, who committed the crime would be minimal.  As acknowledged by the Ninth Circuit, culling weak issues is an essential technique used in appellate practice and it was not unreasonable for appellate counsel to decline to raise the claim.  *See Miller*, 882 F.2d at 1434.

Moreover, although Durham appeared at Horn's trial and testified that he was actually the gunman who committed the robbery and he was unaware that he had pleaded guilty to only aiding and abetting the adult book store robbery,[11] the jury also received evidence during the trial that: (1) Durham was <u>excluded</u> as a contributor to the DNA found on the pantyhose mask (Reporter's Transcript 591, ECF No. 19-9);  (2) Durham told police at the start of the investigation that he did not commit the adult book store robbery (Reporter's Transcript 772-773, ECF No. 19-9); and (3) Durham told police that a man who went by the name of Buddy Love (an alias for Horn) committed the robbery (Reporter's Transcript 772-773, ECF No. 19-9).  Given this additional evidence that Durham's DNA was not on the mask worn by the robber, Durham had originally denied responsibility for the robbery, and Durham entered a plea for aiding the robbery, there is no reasonable probability that the outcome would have been different even if appellate counsel had included the argument that Horn was innocent of robbery charges because of Durham's plea.  *Smith v. Robbins*, 528 U.S.259, 285 (2000).  Thus, there is no prejudice to Horn as a result of appellate's counsel's decision not to raise the claim.  *See James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) ("Failure to make a futile motion does not constitute ineffective assistance of counsel.")

---

[11] Reporter's Transcript 766-767, ECF No. 19-9.

14cv3030-BTM (BSG)

1  Based on the foregoing, the state appellate court's denial of Horn's' ineffective

2 assistance of appellate counsel claim was not objectively unreasonable in light of

3 Supreme Court law.  *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  The

4 Court **RECOMMENDS** claim two be **DENIED.**

5  3.  **Claim Three -  Ineffective Assistance of Trial Counsel**

6  Petitioner claims his trial counsel was ineffective for failing to conduct a pre-trial

7 investigation, which included contacting a witness named Malik, who could have

8 explained that Horn had only touched the pantyhose used in the robbery during a weight

9 lifting session.  (Pet. at 22-27, ECF No. 1; Traverse at 21-23, ECF No. 21.)  Respondent

10 argues the state court's resolution as to claim three was neither contrary to, nor an

11 unreasonable application of the test for ineffective assistance under *Strickland v.*

12 *Washington*, 477 U.S. 688 (1984).  (Mem. of P. & A. Supp. Answer at 13-17, ECF No.

13 18-1.)

14  a.  **Applicable Federal Law**

15  To establish ineffective assistance of counsel, a petitioner must first show his

16 attorney's representation fell below an objective standard of reasonableness.  *Strickland*,

17 466 U.S. at 688.  "This requires showing that counsel made errors so serious that counsel

18 was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

19 *Id.* at 687.  He must also show he was prejudiced by counsel's errors.  *Id.* at 694.

20 Prejudice can be demonstrated by a showing that "there is a reasonable probability that,

21 but for counsel's unprofessional errors, the result of the proceeding would have been

22 different.  A reasonable probability is a probability sufficient to undermine confidence in

23 the outcome."  *Id.*; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).  Further,

24 *Strickland* requires that "[j]udicial scrutiny of counsel's performance . . . be highly

25

26 24

27

28

deferential." *Strickland*, 466 U.S. at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 686-87. The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Id.* at 697.  "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." *Strickland*, 466 U.S. at 687.

### b.  Analysis

Horn's ineffective assistance of trial counsel claim was also presented to the California Supreme Court, which summarily denied the petition.  (Lodgment Nos. 7-8 at ECF No. 8-9 and ECF No. 8-12.)  Therefore, this Court will "look through" to the California Court of Appeal's decision from March 13, 2013.  (Lodgment 6 at ECF No. 8-8.)  *See Medley,* 506 F.3d at 862.  The Court applies the highly deferential standard of review under 28 U.S.C. § 2254(d) to the appellate court opinion, which denied Horn's ineffective assistance of trial counsel claim as follows:

> "Horn contends trial counsel provided ineffective assistance of counsel for not independently investigating the case after retained counsel withdrew from the case.  Horn states trial counsel did not: consult with him to develop a trial strategy; visit him in person more than once to interview him; call a witness who would have provided an alternative reason for the presence of Horn's DNA on the stocking mask; interview Durham prior to his testimony; bifurcate trial and gang enhancements; challenge a detective's statements made in support of a search warrant of Horn's home; call a detective to testify that Durham's modus operandi in his previous robberies was consistent with the actions of a person who committed the robbery; or offer Durham's written plea agreement in evidence....
> Horn does not demonstrate that trial counsel knew or should have known

14cv3030-BTM (BSG)

further investigation was necessary or describe with particularity the nature and relevance of the evidence that counsel failed to present or discover. (*In re Cox*, supra 30 Cal. 4th at p. 1016.) He does not describe how he was prejudiced by the detective's statement made in support of a search warrant, the omission of Durham's written plea agreement from evidence, or the lack of bifurcation of the gang enhancement and trial. The remainder of Horn's allegations concern trial counsel's presentation of the defense theory that Durham was the gunman at the robbery. There is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance. (*Strickland v. Washington, supra*, 466 U.S. at p. 689.) Further because Horn's DNA was found on all items that were discarded by the gunman in flight and the jury disbelieved Durham's testimony that he was the gunman, Horn does not show there was a reasonable probability a more favorable outcome would have resulted had the evidence been presented at trial.

(Lodgment No. 6 at ECF No. 8-8 at 4.)

As discussed in Section V(C)(3)(a) above, the Court need not address both the deficiency prong and the prejudice prong of an ineffective assistance of counsel inquiry if the petitioner fails to make a sufficient showing of either one. *Strickland*, 466 U.S. at 697. Here, the court of appeals focused on the prejudice prong which asks, but for counsel's unprofessional errors, would the result of the proceeding have been different. The court of appeal found that given the entirety of the DNA evidence presented at trial, there was no reasonable probability that the trial's outcome would have been more favorable to Horn even if trial counsel had investigated and prepared in the way Horn contends he should have.

Specifically, in addition to receiving evidence that Horn was the predominant contributor of DNA on the pantyhose mask and that Durham was excluded as a DNA contributor, the jury heard testimony that Horn's DNA was identified on other items discarded near the adult bookstore as the robber fled the scene. These items included two

26

black gloves (for the left and right hands), and a glock semi-automatic firearm. (Reporter's Transcript 591, 597-98 and 599, ECF No. 19-9.)  This additional evidence of Horn's DNA on the gun and gloves, coupled with the store employee's testimony that the solitary robber was masked, wore gloves and was carrying a semiautomatic, supports the outcome in this case instead of undermining it.  (Reporter's Transcript 197-98 and 207-208, ECF No. 19-7.)  Even if Horn's trial counsel called a witness to provide an alternate theory on how Horn's DNA ended up on the pantyhose mask, the DNA of the man whom Horn contends committed the robbery (Durham) was excluded as a contributor of DNA to the mask.  The same conclusion is also true even if Durham's plea agreement was admitted into evidence.  As the court of appeal explained:

> "Law enforcement initially believed that Durham was the gunman; however, that belief changed when Durham was excluded as a contributor of DNA on the stocking mask that was discarded by the perpetrator during flight and Horn was identified as the primary contributor of DNA on the stocking mask.  The prosecution proceeded on the theory Horn was the gunman and Durham aided and abetted the crime by providing materials for it, as he did in three other robberies that occurred close in time to the robbery as a principal.  In addition, he did not plead to assault with a semi-automatic firearm, with enhancements for personal use of a firearm, charges the prosecution would have sought had it believed Durham was the gunman.  Although Durham testified at trial that he was the sole gunman and Horn was not involved in the offense, the jurors disbelieved his testimony.  Horn's DNA was found on all the items discarded by the gunman after the robbery.  Durham told police officers a man named 'Buddy Love' was involved in the offense.  Horn used the name 'Buddy Love.'"

(Lodgment No. 6, ECF No. 8-8 at 3.)

Accordingly, because Durham was excluded from contributing DNA to the pantyhose mask worn by the robber, while Horn's DNA was identified as a predominant contributor to the pantyhose mask, and was also found on the gloves and firearm used in

27

14cv3030-BTM (BSG)

the robbery, there is no reasonable probability of a more favorable outcome for Horn given the entirety of DNA evidence presented at trial.  Thus, Petitioner has not shown how trial counsel's performance was objectively unreasonable, or that he was prejudiced as a result.

Based on the foregoing, the state appellate court's denial of Horn's' ineffective assistance of trial counsel claim was not objectively unreasonable in light of Supreme Court law.  *See Strickland*, 466 U.S. at 688, 694.  The Court **RECOMMENDS** claim three for ineffective assistance of trial counsel be **DENIED.**

### 4.  Claim One – Judicial Bias

Horn's contention in claim one was summarized by the Court of Appeal as: "his conviction was a 'product of judicial bias' because he was prosecuted after Durham had pleaded guilty to the robbery."  Specifically, Horn claims he was forced to stand trial on charges of robbery for which another defendant (Durham) had taken a plea bargain and this violated his right to due process of law and to a fair trial.  (*See* ECF No. 21 at 14.)  Respondent, (citing the Court of Appeals' determination of facts as laid out in Lodgment 6 at 2-3, which are quoted in this section below) claims that the state court reasonably determined Horn and Durham's convictions were not inconsistent.

In light of this Court's determination that the Court of Appeals addressed the merits of Horn's claims despite finding them procedurally defaulted, this Court will "look through" to the California Court of Appeal's decision from March 13, 2013, which stands as the last reasoned decision pertaining to Horn's claims.  (Lodgment 6 at ECF No. 8-8.)  *See Medley,* 506 F.3d at 862.  The Court will apply the highly deferential standard of review under 28 U.S.C. § 2254(d) to the appellate court opinion, which denied Horn's judicial bias claim.  As regards claim one the Court of Appeals stated:

14cv3030-BTM (BSG)

"The materials submitted in support of Horn's petition for writ of habeas corpus do not support his assertion the prosecution believed Durham was the sole gunman in the robbery and maliciously prosecuted Horn for the same crime.  Law enforcement initially believed that Durham was the gunman; however that belief changed when Durham was excluded as a contributor of the DNA on the stocking mask that was discarded by the perpetrator during flight and Horn was identified as the primary contributor of the DNA on the stocking mask.  The prosecution proceeded on the theory Horn was the gunman and Durham aided and abetted the crime by providing materials for it, as he did in three other robberies that occurred close in time to the robbery for which Horn was tried and convicted.  Durham did not plead guilty to robbery as a principal.  In addition, he did not plead to assault with a semi-automatic firearm, with enhancements for personal use of a firearm, charges the prosecution would have sought, had it believed Durham was the gunman.  Although Durham testified at trial that he was the sole gunman and Horn was not involved in the offense, the jurors disbelieved his testimony.  Horn's DNA was found on all items discarded by the gunman after the robbery.  Durham told police officers a man named 'Buddy Love' was involved in the offense.  Horn used the name 'Buddy Love.'  Horn does not make a prima facie showing to merit an order to show cause on contentions (1), (2) and (4)(b), as described above."

(Lodgment No. 6 at ECF No. 8-8 at 3.)

### a.  Applicable Federal Law

"A showing of judicial bias requires facts sufficient to create actual impropriety or an appearance of impropriety."  *Greenway v. Schriro*, 653 F.3d 790, 806 (9th Cir. 2011).  These include "circumstances 'in which experience teaches that the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable.'"  *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 877 (2009), quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

///

14cv3030-BTM (BSG)

### b.  Analysis

The facts in the record, which Horn does not dispute, establish that Horn was the gunman, and not Durham.  To summarize, trial testimony from the adult book store's employee confirmed that a single gunman pointed a semiautomatic at her and the store's security guard and then ordered them to hand over money in the cash register. (Reporter's Transcript 197-98, ECF No. 19-7.)  The employee testified the robber was gloved and wore a black, stocking-like cloth that covered his eyes and face.  (Reporter's Transcript 199-200, 207-208 and 240, ECF No. 19-7.)  The pantyhose mask used in the robbery was discarded during the perpetrator's getaway and found by police.  Horn was later identified by a police forensic investigator as the predominant contributor of DNA on the pantyhose mask.  (Reporter's Transcript 591, ECF No. 19-9.)  The police forensic investigator also testified at trial that the probability of finding a match between the DNA on the pantyhose mask, which matched Horn's profile, and some other randomly selected person of Horn's race was one in 9,100,000,000,000,000,000.  (*Id.*)  In addition to receiving evidence that Horn was the predominant contributor of DNA on the pantyhose mask while Tiano Durham was excluded as a DNA contributor, the jury heard testimony that Horn's DNA was identified on other items discarded near the adult bookstore as the robber fled the scene.  These items included two black gloves (for the left and right hands), and a glock semi-automatic firearm.  (Reporter's Transcript 591, 597-98 and 599, ECF No. 19-9.)  The entirety of the evidence demonstrating Horn's DNA on the pantyhose mask, semiautomatic gun and both pairs of gloves aligns with the store employee's testimony that the one person who robbed the adult bookstore was masked, wore gloves and was carrying a semiautomatic.  (Reporter's Transcript 197-98 and 207-208, ECF No. 19-7.)

14cv3030-BTM (BSG)

Given these undisputed facts that it was Horn who was the gunman, Horn has made no showing of any "circumstances 'in which experience teaches that the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable.'" *Caperton*, 556 U.S. at 877, quoting *Withrow*, 421 U.S. at 47. Therefore, the Court **RECOMMENDS** that claim one be **DENIED**.

### 5. Claim Four - Prosecutorial Misconduct

Horn claims the prosecutor engaged in misconduct by: (a) listing a potential witness (who was never called) solely to create a conflict with retained counsel; and (b) prosecuting him and Tiano Durham for the same crime. (Pet. at 29-36, ECF No. 1.) As an alternative to its argument that claim four is procedurally defaulted, Respondent argues the state appellate court reasonably determined that the second issue raised in Horn's prosecutorial misconduct claim was factually unsupported. (Mem. of P. & A. Supp. Answer at p. 13, ECF No. 18-1.)

In light of this Court's determination that the Court of Appeals addressed the merits of Horn's claims despite finding them procedurally defaulted, this Court will "look through" to the California Court of Appeal's decision from March 13, 2013, which stands as the last reasoned decision pertaining to Horn's claims. (Lodgment 6 at ECF No. 8-8.) *See Medley,* 506 F.3d at 862. The Court will apply the highly deferential standard of review under 28 U.S.C. § 2254(d) to the appellate court opinion, which denied Horn's prosecutorial misconduct claim. As regards Claim 4(a), the court stated:

> "Horn has not provided any evidence to substantiate his claim the prosecution acted maliciously when it named a witness who was not called to testify, as a ploy to disqualify retained counsel. We presume the regularity of proceedings that resulted in a final judgment. ...' Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing."

31

14cv3030-BTM (BSG)

(Lodgment 6 at ECF No. 8-8.)

As regard to Horn's Claim 4(b), the court reasoned:

"The materials submitted in support of Horn's petition for writ of habeas corpus do not support his assertion the prosecution believed Durham was the sole gunman in the robbery and maliciously prosecuted Horn for the same crime. Law enforcement initially believed that Durham was the gunman; however that belief changed when Durham was excluded as a contributor of the DNA on the stocking mask that was discarded by the perpetrator during flight and Horn was identified as the primary contributor of the DNA on the stocking mask. The prosecution proceeded on the theory Horn was the gunman and Durham aided and abetted the crime by providing materials for it, as he did in three other robberies that occurred close in time to the robbery for which Horn was tried and convicted. Durham did not plead guilty to robbery as a principal. In addition, he did not plead to assault with a semi-automatic firearm, with enhancements for personal use of a firearm, charges the prosecution would have sought, had it believed Durham was the gunman. Although Durham testified at trial that he was the sole gunman and Horn was not involved in the offense, the jurors disbelieved his testimony. Horn's DNA was found on all items discarded by the gunman after the robbery. Durham told police officers a man named 'Buddy Love' was involved in the offense. Horn used the name 'Buddy Love.' Horn does not make a prima facie showing to merit an order to show cause on contentions (1), (2) and (4)(b), as described above."

(Lodgment No. 6 at ECF No. 8-8 at 3.)

### a.  Applicable Federal Law

In order to find prosecutorial misconduct, "[i]t is not enough that the prosecutor's remarks [or actions] were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, a prosecutor commits misconduct when his or her actions "'so infect . . . the trial with unfairness as to make the resulting

32

conviction a denial of due process.'"  *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).)

### b.  Analysis

#### i.   Issue 1 - Allegation that prosecutor listed a witness  for trial that he had no intention of calling to create conflict.

In his Petition, Horn alleges the prosecutor placed Tiano Durham's alibi witness, Marcus House, on the witness list and because his retained counsel had previously represented House, retained counsel withdrew.  Horn contends the conflict of interest was intentionally created by the prosecutor to remove retained counsel from his case.  (Pet. at 34, ECF No. 1, Traverse at 10; ECF No. 21.)

To begin, the prosecutor's placement of Mr. House on the witness list creates no appearance of impropriety or misconduct.  It was reasonable for the prosecution to list Mr. House as a potential witness in the event it needed to impeach anticipated trial testimony from Durham that he committed the adult bookstore robbery and did not merely assist with supplying the materials needed for it.  That Mr. House was not ultimately called to the stand does not change the conclusion that placement of Mr. House on the prosecution's witness list did not constitute misconduct.  As the Ninth Circuit has recognized: "it is elementary that litigants are not required to call every witness identified on their witness lists.  The witness list simply provides notice to the court and to opposing counsel of the witnesses who may be presented at trial.  *See generally United States v. Schwartz*, 857 F.2d 655, 659 (9th Cir. 1988).  Whether a litigant actually calls all, or any, of the witnesses on its witness list is purely a matter of trial strategy."  *United States v. Bond*, 552 F.3d 1092, 1097 (9th Cir. 2009).

14cv3030-BTM (BSG)

As to the whether the trial was infected with unfairness due to the fact that Horn's retained counsel withdrew, leaving Horn with appointed counsel, the Court has already recommended a finding that trial counsel's representation was neither deficient, nor prejudicial. As a result, there has been no unfairness by virtue of trial counsel's performance. In addition, as the Court of Appeals found, there is no evidence in the record to substantiate Plaintiff's claim that the prosecution acted maliciously. Accordingly, **IT IS RECOMMENDED** that the Court **DENY** the first issue presented by Horn's fourth claim for prosecutorial misconduct.

### ii.   Issue 2 - Allegation that Horn and Durham were prosecuted for the same crime.

Similar to the argument presented in his ineffective assistance of appellate counsel claim as well as his judicial bias claim, Horn argues that the prosecutor committed misconduct by putting him on trial for robbery when Tiano Durham pleaded guilty to the adult bookstore robbery. (Pet. at 18-20, ECF No. 1, Traverse at 18-20; ECF No. 21.) As the Court has addressed in Sections V(C)(2), V(C) 3 and V(C)4, *supra*, the strength of the entirety of DNA evidence against Horn showed that he, not Durham, was the gunman in the robbery. To summarize, trial testimony from the adult book store's employee confirmed that a single gunman pointed a semiautomatic at her and the store's security guard and then ordered them to hand over money in the cash register. (Reporter's Transcript 197-98, ECF No. 19-7.) The employee testified the robber was gloved and wore a black, stocking-like cloth that covered his eyes and face. (Reporter's Transcript 199-200, 207-208 and 240, ECF No. 19-7.) The pantyhose mask used in the robbery was discarded during the perpetrator's getaway and found by police. Horn was later identified by a police forensic investigator as the predominant contributor of DNA on the

14cv3030-BTM (BSG)

1   pantyhose mask.  (Reporter's Transcript 591, ECF No. 19-9.)  The police forensic

2   investigator also testified at trial that the probability of finding a match between the DNA

3   on the pantyhose mask, which matched Horn's profile, and some other randomly selected

4   person of Horn's race was one in 9,100,000,000,000,000,000.  (*Id.*)  In addition to

5   receiving evidence that Horn was the predominant contributor of DNA on the pantyhose

6   mask while Tiano Durham was excluded as a DNA contributor, the jury heard testimony

7   that Horn's DNA was identified on other items discarded near the adult bookstore as the

8   robber fled the scene.  These items included two black gloves (for the left and right

9   hands), and a glock semi-automatic firearm.  (Reporter's Transcript 591, 597-98 and 599,

10  ECF No. 19-9.)

11          The entirety of the evidence demonstrating Horn's DNA on the pantyhose mask,

12  semiautomatic gun and both pairs of gloves aligns with the store employee's testimony

13  that the one person who robbed the adult bookstore was masked, wore gloves and was

14  carrying a semiautomatic.  (Reporter's Transcript 197-98 and 207-208, ECF No. 19-7.)

15  There is no indication, given the DNA evidence, that the prosecution's case against Horn

16  for robbery was so unfair that the resulting conviction constituted a denial of due process.

17  *Darden*, 477 U.S. at 181.  This is especially true in light of the fact that the trial court

18  allowed Petitioner to bolster his defense and present testimony that was contrary to the

19  state's evidence, including testimony directly from Tiano Durham.  Moreover, as the

20  Court of Appeals found, there is no evidence in the record to substantiate Plaintiff's claim

21  that the prosecution acted maliciously.  **IT IS THEREFORE RECOMMENDED** that

22  the Court **DENY** the second issue presented by Horn's fourth claim for prosecutorial

23  misconduct.

24  ///

25

26                                              35

27

28                                                               14cv3030-BTM (BSG)

### 6.  Request for Evidentiary Hearing

Horn requests "such evidentiary hearings as this Court may deem necessary or appropriate."  (Pet., ECF No. 1 at 37; Traverse , ECF No. 21 at 23.) An evidentiary hearing is not necessary where, as here, the federal claims can be denied on the basis of the state court record, and where the petitioner's allegations do not provide a basis for relief. *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994).  Furthermore, this Court must make its §2254(d) determination based solely on the evidence presented to the state court. *Cullen,* 563 U.S. at 181-82.  In light of the Court's review of the voluminous state court record and its subsequent recommendations denying Plaintiff's claims, **IT IS RECOMMENDED** that the Court find an evidentiary hearing is neither necessary nor warranted in this case.

### VI.    CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Barry T. Moskowitz under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties **no later than October 7, 2016**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties **no later than October 21, 2016**. The parties are advised that failure to file objections within the specified time may waive the right to

14cv3030-BTM (BSG)

1    raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d
2    449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

4    Dated:  September 22, 2016

     Hon. Bernard G. Skomal
     United States Magistrate Judge

37

14cv3030-BTM (BSG)